# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| GALE EREKSON, *on behalf of herself and all others similarly situated*, | Case No. 3:18-32-CMC |
| Plaintiff, | **CLASS COMPLAINT AND TRIAL BY JURY DEMAND** |
| vs. | |
| CLARKSON & HALE, LLC, | |
| Defendant. | |

## NATURE OF ACTION

1.  Plaintiff Gale Erekson ("Ms. Erekson") brings this putative class action against Clarkson & Hale, LLC aka Clarkson Law Firm, LLC ("Clarkson") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, individually and on behalf of all others similarly situated.

## JURISDICTION, VENUE, AND STANDING

2.  This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.  Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Ms. Erekson's action occurred in this district, where Ms. Erekson resides in this district, and where Clarkson transacts business in this district.

4.  "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 136

1

S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992)).

5.     "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. *See id.* at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA"); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

6.     "The Supreme Court has held time and again that the violation of a statutory right to receive information one is entitled to receive creates a concrete injury sufficient to confer standing on a plaintiff." *Zia v. CitiMortgage, Inc.*, 210 F. Supp. 3d 1334, 1343 (S.D. Fla. 2016).

7.     "The FDCPA does create an informational right which did not exist prior to its enactment, and that right is tied to the harm which a consumer may suffer if not provided with that information. Consequently, the deprivation of that information is, in

most cases, sufficient to confer Article III standing. That was the law before *Spokeo*, and that law was not based on an erroneous understanding of Article III like the one corrected by *Spokeo*, but by application of well-settled principles of standing jurisprudence which *Spokeo* did not change (and, in fact, upon which *Spokeo* relied)." *Hagy v. Demers & Adams, LLC*, No. 2:11-CV-530, 2017 WL 1134408, at *4 (S.D. Ohio Mar. 27, 2017).

8.     "[N]umerous other courts, including courts in this circuit and from around the country, have rejected *Spokeo*-based standing challenges in the context of FDCPA violations."  *Neeley v. Portfolio Recovery Assocs., LLC*, No. 115CV01283RLYMJD, 2017 WL 3311045, at *2 (S.D. Ind. Aug. 2, 2017) (citing *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 WL 2539782, at *4, 2017 U.S. Dist. LEXIS 89678, at *11 (E.D. Wis. June 12, 2017)) (collecting cases).

9.     "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition." *Lane*, 2016 WL 3671467 at *4 (emphasis in original).

## THE FAIR DEBT COLLECTION PRACTICES ACT

10.    Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

11.    In order to protect consumers and ensure compliance by debt collectors, "[t]he FDCPA is a strict liability statute that prohibits false or deceptive representations

3

in collecting a debt, as well as certain abusive debt collection practices." *McLean v. Ray*, 488 F. *App'x* 677, 682 (4th Cir. 2012).

12.     The FDCPA must be construed liberally to affect its remedial purpose. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 393 (4th Cir. 2014).

13.     "By providing prevailing plaintiffs statutory and actual damages, as well as reasonable attorney's fees, Congress plainly intended to regulate unscrupulous conduct by encouraging consumers who were the target of unlawful collection efforts to bring civil actions." *Id.*; *see also Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780-81 (9th Cir. 1982) (Congress "clearly intended that private enforcement actions would be the primary enforcement tool of the Act.").

14.     Whether a communication violates the FDCPA "is determined from the vantage of the 'least sophisticated consumer,'" an objective standard that considers how the hypothetical "least sophisticated consumer would interpret the allegedly offensive language." *Russell*, 763 F.3d at 394.

15.     This test "comports with basic consumer protection principles[, as] '[t]he basic purpose of the least sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.'" *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996) (*quoting Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).

**PARTIES**

16.     Ms. Erekson is a natural person who at all relevant times resided in the State of South Carolina, County of Richland, and City of Columbia.

17. Ms. Erekson is a "consumer" as defined by 15 U.S.C. § 1692a(3).

18. Clarkson is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Ms. Erekson, as defined by 15 U.S.C. § 1692a(5).

19. Clarkson uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

20. Clarkson regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

21. Clarkson is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

22. Ms. Erekson is a natural person allegedly obligated to pay a debt, or debts, asserted to be owed or due a creditor other than Clarkson.

23. Ms. Erekson's alleged obligations arise from transactions in which the money, property, insurance, or services that are the subject of the transactions were incurred primarily for personal, family, or household purposes—namely, a personal Synchrony Bank Sam's Club credit card (the "Sam's Club Debt") and a personal Synchrony Bank QCard credit card (the "QCard Debt") (collectively, the "Debts").

24. In connection with the collection of the Sam's Club Debt, Clarkson sent Ms. Erekson a letter dated July 24, 2017.

25. A true and correct copy of the July 24, 2017 Sam's Club letter is attached as Exhibit A.

26. The Sam's Club letter was written on Clarkson's law firm letterhead.

27. The Sam's Club letter was signed by attorney Wylie W. Clarkson.

28. The Sam's Club letter threatened: "That you have thirty days to notify this office of a dispute as to the validity of all or any portion of the debt may not prevent this office from filing a lawsuit within that time." Exhibit A.

29. The Sam's Club letter did not explain how Clarkson's threat of filing a lawsuit against Ms. Erekson within the dispute period comported with Ms. Erekson's right to dispute the debt and request verification.

30. In connection with the collection of the QCard Debt, Clarkson sent Ms. Erekson written correspondence dated July 24, 2017.

31. A true and correct copy of the July 24, 2017 QCard letter is attached as Exhibit B.

32. The QCard letter was written on Clarkson's law firm letterhead.

33. The QCard letter was signed by attorney Wylie W. Clarkson.

34. The QCard letter threatened: "That you have thirty days to notify this office of a dispute as to the validity of all or any portion of the debt may not prevent this office from filing a lawsuit within that time." Exhibit B.

35. The QCard letter did not explain how Clarkson's threat of filing a lawsuit against Ms. Erekson within the dispute period comported with Ms. Erekson's right to dispute the debt.

## CLASS ACTION ALLEGATIONS

36. Ms. Erekson repeats and re-alleges all factual allegations above.

37. Clarkson's Sam's Club letter and QCard letter are based on a form or template used by Clarkson to send collection letters (the "Template").

38. The Template overshadows the disclosures required by 15 U.S.C. § 1692g(a) in the same manner as Clarkson did with Ms. Erekson above.

39. Clarkson has used the Template to send collection letters to over 40 individuals in the State of South Carolina within the year prior to the filing of the original complaint in this matter.

40. Ms. Erekson brings this action on behalf of herself and all others similarly situated. Specifically, Ms. Erekson seeks to represent the following class of individuals:

> All persons with a South Carolina address, to whom Clarkson sent a letter based upon the Template, within one year before the date of this complaint, in connection with the collection of a consumer debt.

41. The proposed class specifically excludes the United States of America, the State of South Carolina, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Fourth Circuit, and the Justices of the United States Supreme Court, all officers and agents of Clarkson, and all persons related to within the third degree of consanguinity or affection to any of the foregoing persons.

42. The class is averred to be so numerous that joinder of members is impracticable.

43. The exact number of class members is unknown to Ms. Erekson at this time and can be ascertained only through appropriate discovery.

44. The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by Clarkson.

45. There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) the existence of Clarkson's identical conduct particular to the matters at issue; (b) Clarkson's violations of the FDCPA; (c) the availability of statutory penalties; and (d) attorneys' fees and costs.

46. Ms. Erekson's claims are typical of those of the class she seeks to represent.

47. The claims of Ms. Erekson and of the class originate from the same conduct, practice, and procedure on the part of Clarkson. Thus, if brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

48. Ms. Erekson possesses the same interests and has suffered the same injuries as each class member. Ms. Erekson asserts identical claims and seeks identical relief on behalf of the unnamed class members.

49. Ms. Erekson will fairly and adequately protect the interests of the class and has no interests adverse to or which directly and irrevocably conflict with the interests of other members of the class.

50. Ms. Erekson is willing and prepared to serve this Court and the proposed class.

51.     The interests of Ms. Erekson are co-extensive with and not antagonistic to those of the absent class members.

52.     Ms. Erekson has retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Ms. Erekson and all absent class members.

53.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)(B). The prosecution of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

54.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the parties opposing the classes. Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the class.

55.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Clarkson has acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

56. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the class predominate over any questions affecting only individual members.

57. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has commenced over the controversies alleged in this Complaint and individual members are unlikely to have an interest in prosecuting and controlling separate individual actions; and (c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692g(b)

58. Ms. Erekson repeats and re-alleges each factual allegation above.

59. A key provision of the FDCPA is § 1692g, which requires a debt collector to send, within five days of its initial communication with a consumer, a written notice which provides information regarding the debt and informs the consumer of his or her right to dispute the validity of the debt, and/or request the name and address of the original creditor, within 30 days of receipt of the notice. *See* 15 U.S.C. § 1692g(a).

60. Congress adopted "the debt validation provisions of section 1692g" to guarantee that consumers would receive "adequate notice" of their rights under the

FDCPA. *Wilson v. Quadramed Corp.,* 225 F.3d 350, 354 (3d Cir. 2000) (citing *Miller v. Payco–General Am. Credits, Inc.,* 943 F.2d 482, 484 (4th Cir. 1991)).

61. This validation requirement is a "significant feature" of the law that aimed to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *See Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1070 (9th Cir. 2016) (citing S. Rep. No. 95-382, at 4 (1977)).

62. To ensure debt collectors' notices meaningfully convey consumers' rights under § 1692g, Congress has further declared that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *Id.*

63. "More importantly for present purposes, the notice must not be overshadowed or contradicted by accompanying messages from the debt collector." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148-49 (3d Cir. 2013).

64. The notice of a consumer's rights under § 1692g may be "overshadowed" by language within the validation letter itself. *See Gostony v. Diem Corp.*, 320 F. Supp. 2d 932, 938 (D. Ariz. 2003) ("The juxtaposition of two inconsistent statements' renders the notice invalid under § 1692g.") (quotations removed).

*65.* "Courts have recognized FDCPA claims where a defendant has provided notice that satisfies the letter, but not the spirit, of the FDCPA requirements." *Williams v.*

*Edelman*, 408 F. Supp. 2d 1261, 1271 (S.D. Fla. 2005) (citing *Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir. 1996)).

66. One way in which a debt collection letter can overshadow the notice of rights under § 1692g is by threatening legal action within the 30-day period.

67. While a debt collector may legally initiate legal action before the expiration of the 30-day period, a debt collection notice violates § 1692g where such threats would cause an unsophisticated consumer to overlook or ignore his or her rights.

68. To assist debt collectors who wish to threaten legal action in collection notices, the Seventh Circuit has drafted "safe harbor" language—adopted by courts around the nation—that explains the apparent contradiction between the consumer's right to dispute within 30 days and the debt collector's right to bring legal action before the expiration of that period, which reads, in relevant part, as follows:

> The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.

*Bartlett v. Heibl*, 128 F.3d 497, 502 (7th Cir. 1997).

69. Where a collection letter makes no effort to explain that the consumer may take advantage of his or her rights under § 1692g, notwithstanding the threat to file a lawsuit within the 30-day dispute period, the debt collector runs the risk of violating § 1692g(b).

70. "*Bartlett* makes clear that although a debt collector has the right to sue a consumer during the statutory thirty-day period, it must tread carefully when leveraging this right in the initial collection letter to extract payment so as not to overshadow or contradict the consumer's validation rights." *Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp. 2d 808, 820–21 (M.D.N.C. 2011).

71. Here, Clarkson's letter does just the opposite of explaining that a dispute will require the debt collector to cease collection, where it suggests that the consumer's dispute will not prevent the debt collector from filing a lawsuit.

72. Clarkson violated 15 U.S.C. § 1692g(b) by overshadowing the disclosures required by 15 U.S.C. § 1692g(a).

WHEREFORE, Ms. Erekson prays for relief and judgment, as follows:

a) Determining that this action is a proper class action, certifying Ms. Erekson as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and designating this Complaint the operable complaint for class purposes;

b) Adjudging that Clarkson violated 15 U.S.C. § 1692g(b) with respect to Ms. Erekson and the class she seeks to represent;

c) Awarding Ms. Erekson and the class she seeks to represent actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Ms. Erekson such additional damages as the Court may allow in the amount of $1,000, pursuant to § 1692k(a)(2)(B)(i);

e) Awarding all other class members such amount as the Court may allow, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or one percent of the net worth of the debt collector, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

f) Awarding Ms. Erekson and the class she seeks to represent, reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3) and Rule 23;

g) Awarding Ms. Erekson and the class she seeks to represent, pre-judgment and post-judgment interest as permissible by law; and

h) Awarding such other and further relief as the Court may deem proper.

## TRIAL BY JURY

73. Ms. Erekson is entitled to and hereby demands a trial by jury.

Dated: January 5, 2018.

        Respectfully submitted,

        /s/ Holly E. Dowd
        Holly E. Dowd (Bar No. 11051)
        Thompson Consumer Law Group, PLLC
        822 Camborne Place
        Charlotte, NC 28210
        Telephone: (888) 332-7252 ext. 260
        Facsimile: (866) 317-2674
        hdowd@consumerlawinfo.com
        Attorneys for Ms. Erekson

**Please send correspondence to the below address**

        Holly E. Dowd
        Thompson Consumer Law Group, PLLC
        5235 E. Southern Ave D106-618
        Mesa, AZ 85206